## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AMERISURE INSURANCE COMPANY and
AMERISURE   MUTUAL   INSURANCE
COMPANY,
Plaintiffs,

v.                                                    Case No. 3:16-cv-00407-BJD-JRK

THE   AUCHTER   COMPANY,   ARCH
INSURANCE   COMPANY,   LANDMARK
AMERICAN INSURANCE COMPANY,
TSG INDUSTRIES, INC. and
B & B OF DUVAL COMPANIES, INC.,

Defendants.
_____/

**AMERISURE INSURANCE COMPANY'S AND AMERISURE MUTUAL INSURANCE COMPANY'S MOTION TO STRIKE THE OPINIONS OF STEVEN C. SHIMP AND TO BAR STEVEN C. SHIMP FROM OFFERING ANY TESTIMONY AT TRIAL AND INCORPORATED MEMORANDUM OF LAW**

Defendants, AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY ("collectively Amerisure"), by and through undersigned counsel, and pursuant to Fed. R. Evid. 702, move to strike the opinions and reports of Steven C. Shimp, which were submitted by Defendant ARCH INSURANCE COMPANY ("Arch"), and to bar Mr. Shimp from testifying at trial.  In support thereof, Amerisure states as follows:

I.       **INTRODUCTION**

This is an insurance coverage dispute wherein Arch seeks to recover certain amounts awarded in the Final Judgment[1] entered in the Underlying Action[2] from Amerisure under certain Commercial General Liability ("CGL") policies of insurance issued to The Auchter Company

---

[1] "Final Judgment" refers to the Final Judgment entered in the Underlying Action entered on November 5, 2014.
[2] The "Underlying Action" refers to the matter styled *Riverside Partners, Ltd. v. The Auchter Company*, *et* al., Case No. 16-2010-CA-006433, Fourth Circuit, Duval County, Florida.

("Auchter").   The Underlying Action involved the construction of a building known as the Everbank Plaza building ("the Project").   Arch has disclosed Steven C. Shimp as a purported expert to offer opinions as to: the characterization of the Final Judgment's award relating to defective window, storefront, and curtainwall system, and Auchter's alleged professional services at the Project. Mr. Shimp's reports are patently and irretrievably deficient and unreliable.

Mr. Shimp offers statements seeking to alter or recast the findings of the underlying trial court in the Final Judgment.   Arch, as a party in the Underlying Action, is bound by those findings and barred from challenging same.   Oddly, in seeking to recast the Final Judgment, Mr. Shimp offers no opinions of his own, much less ones containing any specialized, technical, knowledge or methodology that would assist the trier of fact. Instead, he parrots the statements made by witnesses in the Underlying Action, and regurgitates their conclusions.   Equally improper, Arch attempts to use Mr. Shimp's opinions to interpret and negate the plain language of the Construction Contract entered between Auchter and Riverside Avenue Partners, Ltd. ("RAP"), and to provide legal conclusions relating to same – none of which, notably, are contained in or consistent with the Final Judgment.   And, Mr. Shimp's statements lack the basic *indicia* of an expert's opinion (*i.e.,* testing, proven methodology, or any other factor) that would satisfy the requirements in *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993)("*Daubert*").   By any objective measure, Mr. Shimp's "opinions" fail to meet the requirements under Fed. R. Evid. 702, and the standards set forth in *Daubert*.   Thus, this Court should strike Mr. Shimp's reports and "opinions", and bar Mr. Shimp from offering any testimony at trial.

## II.   BACKGROUND

### A.   Arch's Disclosure of Steven Shimp

On October 14, 2016, Arch disclosed Steven C. Shimp as a purported expert witness, and served two reports entitled: (1) "Opinion of Steven Shimp, P.E. Regarding Failure of The Auchter

Company to Provide Contractor's Professional Services" ("Opinion on Professional Services"), and; (2) "Opinion of Steven C. Shimp, P.E. Regarding the Award of Damages for Defective Window, Storefront and Curtainwall" ("Opinion on Defective Window System"). Copies of these are attached hereto as **Exhibits "A" and "B"**.

In both reports, Mr. Shimp anoints himself as qualified to offer opinions because he asserts he has expertise in "multiple aspects of the business of general contracting, general construction contracts, financing of construction projects and project funding practices in the construction industry." Exhibits A & B, p. 1. He also states in both reports that he was a testifying expert in the Underlying Action. *Id*., at p. 1-2. Mr. Shimp did not offer any opinions as to "professional services", contract interpretation or the alleged defects of the window, storefront or curtainwall in the Underlying Action.

### B.     Final Judgment of the Trial Court in the Underlying Action

The Underlying Action arose out of alleged deficiencies in the construction of the Project. **Exhibit "C"**, Final Judgment. Auchter was the general contractor, and Arch was the surety. *Id.,* at p. 2. Arch undertook the completion of the Project after Auchter was unable to complete the Project. *Id.*, at p. 6.

The Underlying Action proceeded to trial, which, after a twenty-eight (28) day trial, the trial court entered the Final Judgment. *Id.*, at p. 3. Based on the testimony of witnesses, documentary evidence and other material, the trial court awarded certain damages to RAP. *Id.* The trial court entered an award against Auchter in the amount of $11,267,515.75, and an award against Arch in the amount of $8,791,460.72. [Exhibit C, p. 85]. The amounts awarded against Auchter and Arch were not duplicative, but rather were for each entities' own liability to RAP. Out of the amounts awarded against Auchter, the trial court awarded the amount of $5,067,033.01 for building envelope claims, and $2,586,625.86 for the completion of punch list items, [*Id*., at pp.

45, 51].  The trial court also awarded $3,613,856.88 for "delay" damages for Auchter's failure to complete the Project as per the terms of the Construction Contract.  [*Id.*, at pp. 32-39, 55].

In ruling in favor of RAP, the trial court considered the testimony of many witnesses, including Mark Baker of IBA Consultants, Inc. ("*IBA*").  Mr. Baker directed the forensic inspection and testing of the building envelope, analyze the appropriate repair and determined the cost of repairs.  *Id.*, p. 15.  The trial court further noted that Mr. Baker was the only individual that performed testing on the window system of the Project.  *Id.*, at p. 43.  Arch's experts did not perform testing on the window system, nor did Mr. Shimp perform any testing at the Project or speak with any of the subcontractors.  *Id.*, at p. 39-40.

Mr. Shimp, rather, was retained by Arch as a witness to rebut RAP's claim for "delay" damages incurred on the Project because of Auchter's and Arch's failure to complete the Project within the contractually-required time frame, and; to provide an opinion on construction industry practices for approving pending change orders ("PCOs") claimed by Arch, and their value.  *Id.*, at p. 54; 63-70.  The trial court rejected Mr. Shimp's opinion on "delay" damages on the basis that is was unrealistic; it did not take into account the actual progress of the work and the activities affecting tenant improvements.  *Id.*, at p. 54.  The trial court also rejected many of Mr. Shimp's opinions and conclusions on whether Arch could recover amounts on the PCOs.  *Id.*, at p. 63-70.  As to many of the PCOs, the trial court found Mr. Shimp's opinions to be speculative, lacking the requisite actual knowledge, not credible, and based on statements from subcontractors as opposed to personal knowledge.[3]  The trial court further stated that, as to several PCOs, "Shimp had no actual knowledge of the true cause of [the] problem"; he "did not physically inspect the site, did

---

[3] The trial court found that Mr. Shimp's opinion on the recovery of PCOs nos. 85, 86, 134, 41, 61, 100, and 145 was speculative.  *Id.*, p. 63-70.

not speak with subcontractors," and; "rough compute[d]" certain values as to the PCOs.  *Id.,* at p. 68-70.  The trial court also found that Mr. Shimp's opinion on allocation of utility costs was "arbitrary and lacked the necessary predicate under the *Daubert* standard."  *Id.,* at p. 70.

###### C. Mr. Shimp's Purported Opinions

Despite his limited use in the Underlying Acton, Arch now purports to use Mr. Shimp to offer opinions, which he did not, and could not, offer in the Underlying Action.  Initially, Mr. Shimp states, "[i]t is my opinion that:"

(a)     Auchter "provided insufficient supervision on the RAP project, rendering it virtually impossible to provide suitable inspection services of the work";

(b)     Auchter failed to provide suitable mock-up and pre-installation meetings;

(c)     the "leakage experienced on the project was sufficient to make it appropriate to provide testing as was called in the specifications….", and;

(d)     "the above three services are professional services that are necessary and incidental to the conduct of general contracting business."

Exhibit A, p. 6.

Mr. Shimp based his opinions on various contractual requirements contained in the Construction Contract, such as sections 3.3, 13.5, and other sections of the Construction Contract. Exhibit A, p. 3-4.

Additionally, Mr. Shimp states: "[i]t is my opinion that:"

(a)     "The [trial] Court's reliance on IBA's diagnostic testing and both non-destructive and destructive inspections was justified."

(b)     "IBA's testimony that, absent correction of the defects, the windows would leak further as a result of gasket shrinkage and would cause continued water damage to the tenant spaces was valid."

(c)     "The methodology presented by IBA to accomplish the remediation, including the damage to the drywall and acoustical work of others resulting from the correction of TSG's work, was the least cost remedy to the defect."

(d)     "IBA's estimate of $3,762,821 to correct TSG's work was reasonable."

(e)     "IBA/Auld & White's estimate of damage to work of others in the amount of $1,062,492 was reasonable."

Exhibit B, p. 6.

## III.     MEMORANDUM OF LAW

Arch should be barred from offering or utilizing, in any way, Mr. Shimp's professed opinions in this matter, as such opinions seek to undo or recast the findings and rulings made in the Final Judgment, which are binding on Arch.  Further, Mr. Shimp's opinions do not comport with the requirements under Federal Rule of Evidence 702 and/or the *Daubert* standards.

### A.     The Final Judgment in the Underlying Action Binds Arch

Arch, through Mr. Shimp, attempts to re-litigate facts and or alter the holdings made by the trial court in the Final Judgment.  It does so despite being a litigant in the Underlying Action, having had an opportunity to present evidence in support of its positions – including presenting Mr. Shimp as a witness – and despite having settled all claims following the entry of the Final Judgment.  Arch's attempt to recast the findings and conclusions in the Final Judgment is proscribed.  *Mid-Continent Cas. Co. v. Clean Seas Co. Inc*., 860 F. Supp. 1318, 1326-27 (M.D. Fla. 2012) (finding that the parties were bound by the factual determinations made by the trial court in the underlying action, and that those factual determinations could not be re-litigated in subsequent coverage action).

The rulings made by the trial court in the Underlying Action are conclusive.  As such, Arch cannot attempt to re-cast the facts through the use of Mr. Shimp and his report in an attempt to circumvent the factual findings made by the trial court.  "[A] final judgment or decree on the merits by a court of competent jurisdiction constitutes an absolute bar to a subsequent suit on the same cause of action and is conclusive of all issues which were raised or could have been raised in the

6

action." *Brown v. R.J. Reynolds Tobacco Co*., 611 F.3d 1324, 1332 (11th Cir. 2010));
*Southeastern Fidelity Ins. Co. v. Rice*, 515 So.2d 240, 242 (4th DCA 1987) (stating that factual findings and final judgment are binding on the parties in the underlying lawsuit and their insurance carriers, and those parties are estopped from re-litigating those issues).

Moreover, given that the duty to indemnify is measured by the actual facts – which are facts established during trial by the the trial court – and Mr. Shimp's opinions cannot be used to change the actual facts – particularly where Arch unilaterally settled the case shortly after issuance of the Final Judgment.  "The duty to indemnify [under a CGL policy] is narrower than the duty to defend and depends upon actual coverage measured by the facts as they unfold at trial or are inherent in the settlement agreement." citing *IDC Constr., LLC v. Admiral Ins. Co.,* 339 F. Supp. 2d 1342, 1349 (S.D. Fla. 2004); *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So. 2d 1072, 1077 n.3 (Fla. 1998). Facts "inherent in" a settlement agreement are those "facts extant at the time the settlement was reached." *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.,* 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004).  As the duty to indemnify is measured by the actual facts adduced at trial, *i.e.,* Final Judgment, Arch cannot re-litigate those same issue in the coverage action by using a purported expert to get a second bite at the apple. *See Kearney v. Auto-Owners, Ins. Co*., 2009 WL 3712343 *2 (M.D. Fla. November 5, 2009); *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc*., 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004) (stating that the duty to indemnify is measured by the facts adduced at trial).  "[T]o determine whether there is a duty to indemnify, one looks at the actual facts, not only those that were alleged in the state court complaint." *Stephens v. Mid-Continent Cas. Co.,* 749 F.3d 1318, 1325-26 (11th Cir. 2014).

Here, Arch seeks to recover for amounts awarded against Auchter and Arch in the Final Judgment and settled by Arch.  [D.E. 116, p. 11-19].  Witnesses from RAP, Arch and Auchter, testified concerning the parties' obligations under the Construction Contract, the proposed repair

and replacement of the window system, and the economic damages sustained by RAP as a result of the alleged breach of contract.  Exhibit C, p. 2-4.  The actual fact adduced at trial included specific factual determinations concerning the cause of the water intrusion (*i.e.,* failure to use specified factory gaskets, and sealants installed in wrong location [Exhibit C, p. 15]), the repair protocol (*i.e.,* approving IBA's and Auld & White's methodology for performing interior repairs to correct the window system [Exhibit C, p. 43-44]), and the amounts awarded for conducting the repairs.  No mention or finding is made as to "continued water damage to tenant spaces" in the Final Judgment, nor is there any indication of same in IBA's or Auld & White's "estimates" the underlying trial court considered and awarded in the Final Judgment, and which Mr. Shimp anoints as being "reasonable". Exhibit B, p. 6.  In being a party to the Underlying Action, Arch is bound by the findings in the Final Judgment, and may not seek to recast such findings as a means to re-package and pass its responsibility onto to others – particularly through an individual, *i.e.,* Mr. Shimp, whose testimony on contract and economic issues was largely rejected. *See Kearney,* 2009 WL 3712343 *2 (stating that damages awarded, which were established in underlying lawsuit, cannot be re-litigated in insurance coverage action); *Southeastern Fidelity Ins. Co.,* 515 So.2d at 242 (stating that trial court's determination in underlying lawsuit as to the factual and legal issues could not be re-litigated in subsequent coverage action between insured and insurance carrier.). Arch is, thus, bound by the Final Judgment.  And, its attempt to re-characterize or re-classify same through Mr. Shimp's statements is prohibited.

## B.    Legal Standard for the Admission of Expert Testimony

The admission of expert testimony is governed by Federal Rule of Evidence 702, which states that an expert witness "may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3)

8

the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

In addition to the requirement under Fed. R. Evid. 702, an expert witness cannot mimic the testimony of another expert. *Eberli v. Cirrus Design Corporation*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) (stating that an expert dos not assist the trier of fact by merely parroting the opinions of others), *citing to Ohio Environmental Development Ltd. Partnership v. Envirotest Systems Corp.*, 478 F. Supp. 2d 963, 976 (N.D. Ohio 2007) (internal quotations and citation omitted); *Malletier v. Dooney & Bourke, Inc*., 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) ("the expert witness must in the end be giving his own opinion. He cannot simply be a conduit for the opinion of an unproduced expert."); *Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co*., 2007 WL 831613, *3 (S.D. Ind. Mar. 5, 2007) ("What an expert may not do is act as a `mouthpiece' for another undisclosed expert."). Experts must make some findings and not regurgitate another expert's opinion. *Robinson v. Ford Motor Co*., 967 F. Supp. 482, 487 n. 2 (M.D. Ala. 1997).

In determining the admissibility of expert testimony under Fed. R. Evid. 702, the Court applies a "rigorous" three-part inquiry. *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). Expert testimony is admissible if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 562 (11th Cir. 1998) (*citing Daubert,* 509 U.S. at 589). The Court must act as the "gatekeeper", and decide whether the expert is qualified, and the expert's testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 144 (1999).

The proponent of expert testimony always bears "the burden to show that his expert is 'qualified to testify competently regarding the matters he intend[ed] to address; [] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [] the testimony assists

the trier of fact.'" *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (alterations in original).   "An expert may not [] merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

### 1.   Mr. Shimp Offers No Opinions

Mr. Shimp offers no opinions as to the alleged defective windows or the need to remedy the defects at the Project; rather, he merely references and mimics the conclusions of others.  "An expert who supplies nothing but a bottom line, supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989); *Robinson*, 967 F. Supp. 487 n.2.  An expert may not parrot or adopt the position of others. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 733 (10th Cir. 1993) (stating that an expert cannot merely recite another expert's opinion); *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2006) (stating that an expert cannot directly testify as to the conclusions of another expert). In regurgitating the estimates and conclusions of others, Mr. Shimp's reports and his purported opinions contained therein, demonstrate no technical or specialized knowledge. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (stating that an expert must give his own opinion and cannot be a "conduit" for the opinion of another witness).

A similar report was stricken in *Eberli,* 615 F. Supp. 2d at 1364.  There, defendants filed a motion to bar the testimony of plaintiff's expert David Klepacki, an aircraft engine expert, on the basis that his opinion was based solely on flight testing done by another expert, Dr. Butler. Defendants argued that Mr. Klepacki's opinion was not based on any specialized, technical, knowledge or methodology and would not assist the trier of fact because "it merely parrots another expert's opinion."  *Eberli*, 615 F. Supp. 2d at 1365. The district court agreed, and found that Mr. Klepacki's opinion would not assist the trier of fact as the sole basis for his conclusions were based

on Dr. Butler's testing.  According to the district court, Mr. Klepacki's opinion did not satisfy the *Daubert* requirements as he "made no findings regarding the breather line; instead it appears that he simply adopted Dr. Butler's conclusions … [s]uch methodology surely does not satisfy the *Daubert* standards.    Thus, Mr. Klepacki will be precluded from testifying regarding his conclusions…" *Id.*, at 1366; *Bouygues Telecom, S.A. v. Tekelec,* 472 F. Supp. 2d 722, 729 (E.D.N.C. 2007) ("the wholesale adoption of the opinion of another expert verbatim cannot be within the intent of Fed. R. Evid. 702" and the court "performing its gatekeeping function necessarily must ensure that [the expert] is not merely parroting the opinions of others"); *Fowler v. United States*, 2009 WL 2827958, *9 n.59 (W.D. La. Sept. 1, 2009) ("It is well settled that an expert ... may not simply parrot the work actually done by another expert ...."*).*

Like in *Eberli*, Mr. Shimp's report as to the defective window system should be stricken, and Mr. Shimp should be barred from testifying.  Indeed, Mr. Shimp does nothing in his report but parrot the estimates and statements made by other witnesses (*i.e.,* IBA and Auld & White) and vouch for the underlying court's finding as being "justified."  *See* Exhibit "B", p. 6.  Mr. Shimp's "opinions" do not contain any of his own findings, nor has he conducted any tests, ("[t]he Court's reliance on IBA's diagnostic testing and both non-destructive and destructive inspections was justified."),[4] or provide any methodology that forms the basis of his opinions as required under Fed. R. Evid. 702.  To be admissible, an expert must offer an opinion that assists the trier of fact through the application of scientific, technical, or specialized knowledge to understand the evidence or to determine a fact at issue.  *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291-92 (11th Cir. 2005).  As Mr. Shimp's "opinions" are devoid of any such knowledge, and merely regurgitate the statements and conclusions of others, he fails to satisfy the *Daubert* standards.

---

[4] Exhibit "B", Mr. Shimp's Report, p. 6.

Part and parcel with failing to offer any opinions, Mr. Shimp purports to recycle the hearsay of others. It is inadmissible hearsay for an expert to use opinion testimony of another expert in order to bolster or support his opinion. *See United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) (holding that an expert witness could not bolster his opinion testimony by testifying that a non-testifying expert's conclusions were essentially the same as his opinion testimony). In *Tran Trong Cuong*, the Circuit Court found that an expert witness may not bolster or support his opinion by saying that another expert agrees with his conclusions. *Id.* There, Dr. MacIntosh – a medical expert – testified that he reviewed another expert's opinions and charts, and then proceeded to opine that his findings were essentially the same as that other expert. *Id.*; *Mike's Train House, Inc.,* 472 F.3d at 409-410 (stating that Fed. R. of Evidence 703 does not allow an expert witness to testify that his opinions are similar to the opinions of another expert).

Here, Mr. Shimp does even less than the experts in *Tran Trong Cuong*. Mr. Shimp did no testing and drew no conclusions or his own; instead he merely references and purports to vouch for Mr. Baker's conclusions and estimates as a means to presumably satisfy his own *Daubert* shortcomings (*i.e.,* lack of any testing, investigation and methodology). *United States v. Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir. 1989) ("We are persuaded that Fed. R. Evid. 703 does not permit an expert witness to circumvent the rules of hearsay by testifying that other experts, not present in the courtroom, corroborate his views."). Mr. Shimp's vacuous report is impermissible and inadmissible. Thus, the report and opinions contained therein should be stricken, and Mr. Shimp should be barred from offering such "opinions" at trial.

### 2.    Mr. Shimp Offers Inadmissible Legal Conclusions

Mr. Shimp's opinion on "professional services" should be stricken as – in addition to seeking to opine on an issue the trial court rejected in the Final Judgment – it offers legal conclusions on the interpretation of the Construction Contract. Specifically, Mr. Shimp makes

impermissible legal conclusions as to whether Auchter was required to provide "professional services" under the Construction Contract.   Mr. Shimp states that §3.3 Supervision and Construction Services, §13.5 Tests and Inspections, specification section 01400, and other sections required Auchter to provide professional services under the Construction Contract.  Exhibit B, p. 3-4, ¶¶10-11.

An expert witness may not offer legal conclusions; only the Court may instruct the jury as to the state of the law.  *Montgomery,* 898 F.2d at 1541.  As such courts have excluded expert testimony that employs terminology with legal import.  *See Tillman v. C.R. Bard, Inc.*, 2015 U.S. Dist. Lexis 40338, *38 (M.D. Fla. Mar. 30, 2015).  Where an expert offers an opinion as to the legal implications of the facts, that testimony also encroaches on the responsibilities of the judge and jury, and is inadmissible. *Id.; see Dubiel v. Columbia Hosp. (Palm Beaches) L.P.*, 2005 WL 5955691 *3-4 (S.D. Fla. Jan. 11, 2005) (striking expert's testimony that hospital operated in full compliance with Fair Labor Standards Act).

In *McMahan Securities Co., L.P. v. FB Foods, Inc*., 2007 WL 473666 *2 (M.D. Fla. Feb. 8, 2007), the district court struck an expert report that attempted to provide an opinion on the interpretation of the parties' agreement, the activities performed by the parties under the agreement, and the acts constituting breach of the agreement – akin to what Mr. Shimp seeks to do.  *Id.*  Defendants argued that the expert's opinion invaded the role of the district court by construing the meaning and effect of the agreement. *Id.,* at 2-3.  The district court agreed, excluded the expert's opinion, and, in reaching its conclusion, echoed the precept that the interpretation of a written contract – and the duties and obligations stemming therefrom – is a matter of law to be determined by the court.  *Id.*, *citing to DEC Elec., Inc. v. Raphael Const. Corp*., 558 So. 2d 427, 428 (Fla. 1990) (holding that an expert's opinion purporting to proffer an interpretation of an agreement is an impermissible legal conclusion).

13

Here, Mr. Shimp attempts to construe the Construction Contract, and to provide an opinion as to the meaning of the Construction Contract (*i.e.*, whether Auchter was contractually required to provide professional services), including whether Auchter's actions and/or non-actions constitute a breach of the Construction Contract. Such opinions encroach on the role of the Court. *See Montgomery,* 898 F.2d at 1541 (stating "[a] witness may not testify to the legal implications of conduct"). Accordingly, Mr. Shimp's "opinions" as to "Professional Services" should be stricken, and Mr. Shimp should be barred from offering such opinions at trial.

### 3.   Mr. Shimp's Opinions Fail the *Daubert* Standards

Even if parroting another's estimates and conclusions, or offering mere legal conclusions, could qualify as an admissible expert opinion under Fed. Rule Evid. 702, Mr. Shimp's opinions are patently unreliable as they lack any kind of testing, proven methodology or any other factor that satisfies the *Daubert* requirements. *Frazier,* 387 F.3d at 1262-63 (expert testimony must be reliable). Contrary to what *Daubert* requires – an expert's opinion and conclusion must "be based upon sufficient facts or data"[5] – Mr. Shimp does not offer any opinions, much less one that is based on facts and data or testing. Part of the district court's analysis under *Daubert* is to "ensure that speculative, unreliable expert testimony does not reach the jury." *R&R International, Inc. v. Manzen*, LLC, 2010 WL 3605234 *7 (S.D. Fla. Sept. 10, 2010). *Daubert's* intent and purpose are served by striking Mr. Shimp's opinions.

### a.   Mr. Shimp's Opinions are Unreliable

Mr. Shimp's statements fall far short of the reliability factors set forth in *Daubert*; ("in determining whether an expert's opinion is reliable the court looks at whether the methodology by which the expert reached his conclusions is sufficiently reliable").[6] Mr. Shimp attempts to provide

---

[5] *Daubert,* 509 U.S. at 595.
[6] *Daubert,* 509 U.S. at 589.

opinions on matters, which were not only outside the scope of his involvement on the Project,[7] but lack the requisite supporting testing or facts.   Indeed, as noted by the trial court in the Final Judgment, Mr. Shimp "did not physically inspect the site [and] did not speak with the subcontractors", and that he did not have actual knowledge of the problems at issue on the Project.[8] Additionally, the trial court found Mr. Shimp's testimony on many of the economic topics – topics notably he strays from in this matter – to be speculative and unpersuasive.  Exhibit C, p. 54.  As Mr. Shimp's divergent opinions here are conjectural, unreasoned and untested, they provide no value to this Court or to the judicial process.  *Mid-State Fertilizer Co.,* 877 F.2d at 1340 (stating that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process" and judges should not be  "buffaloed" by unreasoned expert opinions that simply draw inferences from the case record and give legal opinions).

On point in demonstrating the unreliability of Mr. Shimp's opinions is *McCorvey,* 298 F.3d 1253.  There, the 11th Circuit affirmed the district court's ruling in striking an expert's affidavit submitted in context of a party's summary judgment motion based on the failure to satisfy the reliability factor.  *Id.,* at 1256.  The affidavit offered testimony on whether a catheter had a design defect which caused the plaintiff's injuries.  *Id.* at 1256.  Defendants moved to strike and exclude the testimony of the proffered expert for his failure to base his opinions on methods and procedures of science.  *Id.*  In affirming the district court's ruling, the 11th Circuit agreed that the expert's engineering report was not reliable, as the expert did not conduct any testing on the catheter, did not talk to medical personnel, did not cite scientific literature in support of his theories, and did not consider or test for other possibilities.  *Id.,* at 1256-1257.  Like in *McCorvey*, Mr. Shimp

---

[7] Mr. Shimp provided an opinion in the Underlying Action on two limited topics: Arch's claims as to the payment of PCOs, and as a rebuttal witness as to RAP's calculation of delay damages.  Mr. Shimp was not retained to provide an opinion in the Underlying Action as to professional services or Damages to Windows, Storefront or Curtainwall.
[8] Exhibit C, p. 64-70.

conducted no testing or analysis, at the Project or otherwise, to test or support his opinions, nor did he talk to any of the contractors or subcontractors at the Project. Instead, he mimics others' conclusions and estimates, and opines as to legal obligations under a contract. *McCorvey*, thus, should guide this Court is striking Mr. Shimp's opinions.

Similarly, in *Farley v. Oceania Cruises*, 2015 WL 1131015 *7-8 (S.D. Fla. March 15, 2015), the district court struck the testimony of a maritime expert based on its unreliability where the expert relied primarily on secondary written materials to reach his conclusions. The district court found that this was not enough to establish the reliability factor as the expert "failed to inspect the vessel where the accident took place or interview any crew members [] cite any publications or experiments to support his opinion [and] did not provide a detail explanation of how his experience supports his opinions." *Id.; see also In re: Accutane Products Liability*, 511 F. Supp. 2d 1288 (M.D. Fla. 2007) (striking expert report which relied on clinical trials without an independent inquiry as to the methodology as it did not satisfy the requirements of *Daubert* and Fed. R. Evid. 702); *Hall v. Flannery*, 2016 WL 6543513 (7th Cir. November 4, 2016) (admission of expert's testimony in medical malpractice trial warranted a new trial where there was no information provided regarding the expert's knowledge and related experience, in contravention of *Daubert* requirements).

Here, like the conclusions reached in *McCorvey* and *Farley*, Mr. Shimp's "opinions" lack the requisite reliability under *Daubert*. Mr. Shimp renders his opinions without having conducted any inspection of the curtain wall or window system and without having conducted any testing at the Project whatsoever. In fact, the sum total of Mr. Shimp's testing is to characterize the underlying court's reliance on *another's testing* as being "justified." Exhibit "B", p. 6.[9] And, Mr.

---

[9] Mr. Shimp's report states, "The Court's reliance on IBA's diagnostic testing and both non-destructive and destructive inspections was justified." *Id.*

Shimp provides no explanation or basis as to how or why he concludes others estimates are "reasonable." [10]  *Id.*; *see Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) (stating that the trial court's gatekeeping function requires more than simply "taking the expert's word for it", and there is nothing in either *Daubert* or the Federal Rules of Evidence that requires a district court to admit opinion evidence "by the *ipse dixit* of the expert.").  Without having conducted any testing, taken any measurements, photographs or collected data, *etc.,* Mr. Shimp's opinion are speculative at best, and fail to satisfy the *Daubert* requirements.

### b.   Mr. Shimp Has Not Conducted any Independent Testing or Investigation on the Project

Mr. Shimp does not provide any explanation of how his general experience in the construction industry specifically qualifies him to render opinions on repairs to a curtain wall and the window system for the Project, or to adopt cost estimates relating to same, particularly when he admittedly has neither inspected the window system, conducted testing on the Project, nor offered any opinions as to the building envelope in the Underlying Action.  Exhibit C, p. 39-40. Mr. Shimp further provides no support for his conclusion that IBA's/Auld & White's repair costs were reasonable, and how he reached that conclusion.[11]  *See McGee v. Evenflo Co.*, 2003 U.S. Dist. LEXIS 25039, at *13 (M.D. Ga. Dec. 11, 2003) (stating that "the accepted methodology, characterizing the practice of an expert in the field of engineering, simply does not involve guesswork or even conjecture . . . .").

---

[10] Mr. Shimp merely states, "d. IBA's estimate of $3,762,821 to correct TSG's work was reasonable" and "e. IBA/Auld & White's estimate of damages to the work of others as necessitated by the correction of TSG's work in the amount of $1, 062,492 was reasonable."

[11] There is no indication that Mr. Shimp spoke with and/or surveyed any contractors, subcontractors or others to determine if the costs estimates for the material and/or labor to repair the window systems and/or curtain wall – as provided by IBA and/or Auld & White – are consistent with the market rates or industry standards for the type of work to be provided.  *McGee,* 2003 U.S. Dist. LEXIS 25039, at *13 (M.D. Ga. Dec. 11, 2003) (stating that the accepted methodology does not involve guesswork or even conjecture; rather, accepted methodology involves "some inquiry into industry standards, practices, or publications and results in conclusions based upon concrete data, testing, measurements, or calculations.").

Additionally, Mr. Shimp provides an opinion on whether Auchter was providing professional services in the form of inspection services, mock-up and pre-installation meetings and testing without conducting any independent investigation or testing on the Project.  Mr. Shimp opinions are devoid of any *indicia* of reliability, *e.g.,* documentation to support his conclusions, background research or interviews with personnel of RAP, Auchter, IBA, Auld & White or any of the subcontractors that were working on the Project to discuss his conclusions. There is no indication the Mr. Shimp spoke with anyone that was actually on the Project, and/or worked at the locations where the repair work was performed. A district court can properly excludes expert testimony where the expert has conducted no independent research, and the expert does not provide any support for his assumptions, and instead relies on a "leap of faith."  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 862 F. Supp. 2d 1322, 1333-34 (S. D. Fla. 2012).

In their entirety, Mr. Shimp's opinions show that he has not employed any clear specific technique or methodology, as required by *Daubert*, nor has he done any testing to form his opinions.  His opinions lack the requisite independent analysis to support his conclusions as to the defects at the Project, any damage at the Project, costs to repair the Project or the validity of his conclusions.  And, he offers no evidence to indicate whether his conclusions are generally accepted in the scientific community.  Rather, Mr. Shimp merely adopts the findings made by the trial court in the Final Judgment, and IBA's estimates and conclusions, without making any of his own findings regarding the topics of his opinion.  *See Eberli*, 615 F. Supp. 2d at 1364 (striking expert testimony concerning the cause of the failure of an aircraft's engine because the expert's opinion were based on conclusions and findings made by another expert).  Mr. Shimp's opinions are, therefore, unreliable, and should be stricken.

**C.    Mr. Shimp's Statements as to the Construction Contract Violate the Parol Evidence Rule and Invade the Court's Domain**

The interpretation of a contract falls within the Court's domain as a purely legal question. *See Socas v. Northwestern Mutual Life Ins. Co.,* 829 F. Supp. 2d 1262, 1266-67 (S.D. Fla. 2011) (construing a contract is within the province of the court); *Browning v. Navarro*, 743 F.2d 1069, 1080 (5th Cir. 1984) ("Where the issue is solely a question of interpreting contractual language, it is a question of law."). Additionally, the Parol Evidence Rule, "precludes consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement absent fraud, accident or mistake." *Birmingham Fire Ins. Co. of Penn., et al. v. Comcar Industries, Inc., et al.*, 2008 U.S. Dist. LEXIS 88597 (M.D. Fla. Oct. 20, 2008); *State Nat. Ins. Co. v. Lamberti, et al.*, 2009 WL 702239 *2 (S.D. Fla. March 17, 2009) (this court has consistently held that parol evidence is not admissible where terms of contract are complete and unambiguous).

Mr. Shimp's attempt to opine as to the scope, effect and meaning of the Construction Contract violates these well-settled principles. *Birmingham Fire Ins. Co. of Penn.,* 2008 U.S. Dist. LEXIS 88597 ("[t]he parol evidence rule precludes consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement . . . ."). Moreover, the construction contract includes an integration clause at Article 1, which states that "[t]his Subcontract, and all documents incorporated by reference herein, represents the entire and integrated agreement between the parties and supersedes all prior negotiations, representations, proposals, stipulations or agreements, either written or oral." **Exhibit "D."** The construction contract clearly states that no extrinsic information, documentation, or communication can act to supersede the plain language of the construction contract. The language of the construction contract is the best evidence of the parties' intent, and the plain meaning controls. *See Limu Co. LLC v. Burling*, 2013 WL 3462327 *5 (M.D. Fla. July 9, 2013). The introduction of extrinsic

evidence to aid in the interpretation of a contract is prohibited unless the contract is ambiguous. *Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987) (*citing Uransky v. First Federal Savings and Loan Ass'n of Ft. Myers,* 684 F.2d 750 (11th Cir. 1982)).  Mr. Shimp offers no explanation, justification or even suggestion as to why this Court needs, or would even benefit, from being lectured as to the meaning of the Construction Contract.  The Construction Contract is clear and unambiguous, and Arch has not argued otherwise, nor did it argue as much in the Underlying Action.  As Florida law does not permit – nor does the Court need – extrinsic information to interpret contractual provisions, the Shimp reports, for these additional reasons, are inadmissible, and should be stricken and excluded.

**WHEREFORE,** Defendants, AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, respectfully requests that this Court enter an Order granting its Motion to Strike the opinions and reports of Steven C. Shimp, exclude Steven C. Shimp from offering any testimony at trial, bar Arch from seeking to offer such opinions at trial, and for such further relief as the Court deems proper and just.

### CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN MOTION

Pursuant to Local Rule 3.01(g), we hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues and have been unable to resolve the issue.

Dated: November 8, 2016.

Respectfully submitted,

By:   */s/ Andrew F. Russo*
Attorney for Amerisure Insurance Company and
Amerisure Mutual Insurance Company

Andrew F. Russo, FBN 508594
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
109 N. Brush Street, Suite 500
Tampa, FL 33602
(813) 229-7007 (Telephone)
(813) 223-6544 (Facsimile)
arusso@rywantalvarez.com
and
Donald E. Elder, IL Bar No. 6255889 (admitted *pro hac vice*)
Brett L. Warning, IL Bar No. 6199057(admitted *pro hac vice*)
Emerson & Elder, P.C.
53 W. Jackson Blvd., Suite 526
Chicago, IL 60604
(312) 520-2502 (Telephone) / (312) 265-1603 (Facsimile)
dee@emersonelder.com
brett@emersonelder.com
*Attorneys for Plaintiffs Amerisure Insurance Company*
*and Amerisure Mutual Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 8, 2016, the foregoing document is being served on all parties who have appeared through the Court's CM/ECF system.

By:   */s/ Andrew F. Russo*
Attorney for Amerisure Insurance Company and
Amerisure Mutual Insurance Company

Andrew F. Russo
FBN 508594
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
109 N. Brush Street, Suite 500
Tampa, FL 33602
(813) 229-7007 (Telephone)
(813) 223-6544 (Facsimile)
arusso@rywantalvarez.com
*Attorneys for Plaintiff Amerisure Insurance Company*
*and Amerisure Mutual Insurance Company*